Elvin LaBROSSE, et al., Plaintiffs,

v.

The TRUSTEES OF the ASBESTOS WORKERS LOCAL 47 RETIREMENT TRUST PLAN, et al., Defendants.

No. 1:00–CV–582.

United States District Court, W.D. Michigan, Southern Division.

March 26, 2001.

Jay W. Tower, Sotiroff & Abramczyk, PC, Bingham Farms, MI, for Elvin La-Brosse, Louis Oravitz, Henry Glazier, Robert Abbs, William P. Wood, plaintiffs.

Christopher E. LeVasseur, Stark, Reagan & Finnerty, Troy, MI, for Local 47 Trustees of the Asbestos Workers Retirement Trust Plan, Terry Cameron, Joel Christensen, Thomas Dylenski, Craig Grigonis, Richard Kitts, Mickey Loftns–Phillips, Greg Revard, Rick Sherman, Larry Tolbert, Robert A. Williams, defendants.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

Plaintiffs,[1] participants in the Asbestos Workers Local 47 Retirement Trust Plan (the "Plan"), and "pensioners" under the terms of the Plan, filed this action against the Plan and its Trustees,[2] challenging amendments to the Plan which affect the calculation of their retirement benefits. The parties have filed cross-motions for summary judgment. For the reasons that follow this Court finds in favor of the Defendants.

## I.

The Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A), and is accordingly governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The individually named Defendants were Trustees of the Plan during all or part of the 1998–2000 time period.

The Plan has been in existence since 1956. The Plan provides for the payment of monthly retirement benefits based upon a formula of set dollars multiplied by years of credited service.[3] The number of dollars has been increased over the years, from $3 in 1956 to $45 in 1998.

Prior to 1990, each time the Plan increased the benefit rate for active employees, a separate decision was made regarding an increase in the rate for Pensioners (retired participants) and surviving spouses. From 1959 to 1990 the increases were identical, with one exception. During the 1970s, active employees' benefits were reduced from $16 to $13, but the benefits of Pensioners and surviving spouses were not similarly reduced. Accordingly, the Pensioners and surviving spouses did not receive any further increases until the benefit rate for active employees was restored to the $16 level. Thereafter, the Pensioners and surviving spouses again began receiving a dollar for dollar increase identical to that applicable to active employees.

In 1990 the Thirty–Fourth and Cumulative Amendment to the Plan added section 5.1(e) which specified that Pensioners and surviving spouses would receive the same increases in benefits that the active employees received.[4]

---

**1.** Plaintiffs are Elvin LaBrosse, Louis Oravitz, Henry Glazier, Robert Abbs and William P. Wood.

**2.** The individually named Defendants are Terry Cameron, Joel Christensen, Thomas Dylenski, Craig Grigonis, Richard Kitts, Mickey Loftus–Phillips, Greg Revard, Rick Sherman, Larry Tolbert, and Robert A. Williams.

**3.** Section 5.1 of the Plan explains the "Accrued Benefit" as follows: "the monthly Ac-

crued Benefit under the Life Annuity Form as of any date of determination shall be an amount determined by multiplying [a set dollar amount] ... by the Participant's number of years of Credited Service and fractions thereof."

**4.** Section 5.1(e) provided in pertinent part:

If the Accrued Benefit rate established by this Section 5.1 is increased from time to time by the Trustees, the monthly Retire-

In August 1998 the Forty–Second Amendment to the Plan amended section 5.1, Accrued Benefits, so as to remove subparagraph (e) in its entirety. In 2000, pursuant to the Forty–Seventh Amendment, active employees received an $8.50 raise, from $45 to $53.50 per year of Credited Service. Pensioners and surviving spouses received only a $2.50 raise, from $45 to $47.50 per year of Credited Service.

Plaintiffs filed this action, alleging in Count I that the Forty–Second and Forty–Seventh Amendments violate section 204(g)(1) and 404(a)(1)(A) of ERISA, and alleging in Count II that the Trustees' actions violate section 12.2 of the Plan and section 404(a)(1)(A) of ERISA.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The parties in this case agree that there are no genuine issues of fact, and that the legal issues may be decided on their cross-motions for summary judgment.

## II.

Plaintiffs' primary contention in this case is that the removal of section 5.1(e), which was adopted in 1990, and then removed from the Plan in 1998, violates section 204(g)(1) of ERISA.

Section 204(g)(1) of ERISA provides, with exceptions not relevant here, that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan ...." 29 U.S.C. § 1054(g)(1). Plaintiffs do not argue that the dollar amount of their benefit has been decreased. Rather, they contend that the automatic benefit escalator of section 5.1(e) was an accrued benefit such that its removal violated section 204(g)(1). Defendants disagree with Plaintiffs' contention. Defendants contend that the automatic benefit escalator of section 5.1(e) was not an accrued benefit because it was contingent, speculative, and unfunded.

■ This Court is faced with a question of law involving the interpretation of the term "accrued benefits" under ERISA.[5] ERISA defines the term "accrued benefit," in the case of a defined benefit plan, as "the individual's accrued benefit determined under the plan ... expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23)(A). The Plan specifies that the monthly accrued benefit is determined by multiplying a set dollar amount by the Participant's number of years of service.[6] The annual Accrued Benefit is defined as twelve times the monthly Accrued Benefit.[7]

---

ment Benefit then being paid to Pensioners who retired before the effective date of said increase ... and the monthly Retirement Benefits then currently being paid to surviving spouses of deceased Participants and deceased Pensioners who died prior to the effective date of such increase shall be increased to a monthly Retirement Benefit which such Pensioners or surviving spouses would have received if the monthly Accrued Benefit under the Life Annuity Form upon which the Retirement Benefits were computed was the amount to which the Trustees have increased the Accrued Benefit .... Thirty–Fourth and Cumulative Amendment, ¶ 5.1(e).

**5.** While ERISA leaves the question of the content of the benefit largely to the private parties creating the plan, the determination of whether the benefit is within the definition of an "accrued benefit," or some other term found in the statute, falls within the purview of a court's interpretation of ERISA. *See Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 511, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981).

**6.** Plan section 5.1. *See* footnote 3.

**7.** Plan, section 5.1.

■ Under normal English usage, an accrued benefit is a benefit that has accumulated by growth. See *Oxford English Dictionary*. Accrued benefits are certain and specific. They are grounded in time. Thus, the Third Circuit explained that "[a]ccrual provisions provide a formula for calculating the amount of the normal retirement benefit which an employee has earned **at any given time.**" *Hoover v. Cumberland, M.D. Area Teamsters Pension Fund,* 756 F.2d 977, 983–84 (3rd Cir. 1985). "[A]n employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased **at that particular point in time.**" *Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan,* 854 F.2d 1516, 1524 (3rd Cir.1988) (emphasis added).

■ ERISA's section 204(g), the "anti-cutback" rule, was intended to prevent employers from "pulling the rug out from under" employees participating in a plan. *Williams v. Cordis Corp.,* 30 F.3d 1429, 1431 (11th Cir.1994). One of Congress' central purposes in enacting ERISA was to prevent the "great personal tragedy" suffered by employees whose vested benefits are not paid when pension plans are terminated. *Nachman Corp. v. Pension Ben. Guaranty Corp.,* 446 U.S. 359, 374, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980) (footnote omitted). "Congress wanted to correct this condition by making sure that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he actually will receive it." *Id.* at 375, 100 S.Ct. 1723.

■ That is not to say that all of a plan participant's hopes or expectations qualify as accrued benefits. Section 204(g)(1) prohibits only the reduction of accrued benefits in existence; it does not prohibit an amendment which has only eliminated future benefit accrual. *Aldridge v. Lily–Tulip, Inc., Salary Retirement Plan Benefits Committee,* 40 F.3d 1202, 1211 (11th Cir.1994). In *Lindsay v. Thiokol Corp.,* 112 F.3d 1068 (10th Cir.1997), Thiokol's plan was amended to eliminate an opportunity to accrue early retirement subsidies. The court held that the Amendment did not violate ERISA because it did not take away subsidies that had already accrued prior to the Amendment, but merely eliminated the possibility of obtaining such subsidies in the future. 112 F.3d at 1071–72. "Thiokol's plan complies with 29 U.S.C. § 1054(g) because it preserves all early retirement benefits, including subsidies, that accrued prior to the effective date of the amendment." *Id.*

■ In a similar vein the Supreme Court has observed that "plan members generally have a nonforfeitable right only to their 'accrued benefit,' so that a plan's actual investment experience does not affect their statutory entitlement. Since a decline in the value of a plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus—even if it is partially attributable to the investment growth of their contributions." *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 440–41, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999).

■ Decisions to increase benefits are not ministerial functions, but are instead discretionary and uncertain, dependent upon a multitude of factors. As noted in *Corcoran v. Bell Atlantic Corp.,* No. 97–510, 1997 WL 602859, at *5 (E.D.Pa. Sept.23, 1997), the trustees could freeze the plan by completely eliminating any future accrual or increase of benefits under the plan.

Plaintiffs have provided very little by way of legal argument. They have one string cite of cases on page 7 of their brief

without explanation of what proposition those cases support. The most recent case they cite, *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 980 F.2d 465 (7th Cir.1992), held that a cost of living adjustment ("COLA") in a pension plan, even though unfunded, was an "accrued benefit," and that its elimination was a violation of ERISA. *Id.* at 468–470. Unlike the discretionary increases at issue in this case, the COLA in *Hickey* was tied to the consumer price index ("CPI"), so the calculation of future benefits was at least automatic, guaranteed, and somewhat predictable. Furthermore, as noted by Defendants, *Hickey* was decided before the IRS letter ruling 9723048 which specifically provided that elimination of a COLA did not violate section 411(d)(6), a provision in the Internal Revenue Code that parallels section 204(g)(1) of ERISA.[8]

■ When the Forty–Second Amendment was adopted, the Plaintiffs' accrued benefit was only what the Plan provided their benefit to be "at that particular time," i.e., the applicable years of Credited Service multiplied by $45. Plaintiffs did not have an "accrued benefit" in every rate increase that might be offered to active employees in the future. Plaintiffs were denied no increases that "accrued" to them while section 5.1(e) was still a part of the Plan. Neither the Forty–Second Amendment which removed section 5.1(e) nor the Forty–Seventh Amendment which set different increases for active employees than for Pensioners and surviving spouses decreased their accrued benefits. Defendants are accordingly entitled to judgment in their favor on Plaintiffs' allegations that

their actions violated section 204(g) of ERISA.

### III.

■ Plaintiffs also contend in Count I that Defendants' removal of section 5.1(e) from the Plan violated section 404(a)(1)(A) of ERISA.

ERISA section 404(a)(1)(A) provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan.

29 U.S.C. § 1104(a)(1)(A).

Although Plaintiffs assert that the Trustees breached their fiduciary duties, there is no allegation that they acted in their own interests, or to the detriment of the interests of the participants as a whole. According to the Trustees, they made a determination "that it would be in the best interests of all the participants of the Plan to return to the original policy of deciding whether to provide benefit rate increases to retirees at the time an increase is proposed, i.e., on a case-by-case basis."[9] Plaintiffs do not refute Defendants' assertion that they acted on behalf of all participants. Plaintiffs appear to be arguing merely that Defendants failed to act for the benefit of a specific class of participants, i.e., the Pensioners and the surviving spouses. They have not, however, cited any legal authority in support of their assertion that Defendants owed this sub-

---

**8.** Although it is the Department of Labor, rather than the Department of Treasury that governs ERISA, IRS rulings are nevertheless relevant. The Supreme Court has stated that the courts should look to the views of the agencies responsible for interpreting ERISA, the PBGC and the IRS, in determining what

benefits qualify as accrued benefits. *Hickey,* 980 F.2d at 469 (citing *Mead Corp. v. Tilley,* 490 U.S. 714, 726, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989)).

**9.** Defendants' Exh. 5, Trustees 12/6/98 letter to IRS.

group of participants a special duty that superseded their duty to the participants as a whole.

When the Trustees adopted the Forty–Second Amendment which removed section 5.1(e), they made the amendment contingent on a favorable determination letter from the IRS.[10] Plaintiffs had an opportunity and did in fact voice their opposition to the Amendment to the IRS, raising the same argument they have raised here, i.e., that the Amendment eliminates an accrued benefit—the automatic escalator.[11] Plaintiffs argued that the elimination of the accrued benefit was contrary to 26 U.S.C. 411(d)(6), the section of the IRC which corresponds to section 204(g) of ERISA. *See, Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 979, n. 3 (6th Cir.2000). The IRS made a favorable determination on the Forty–Second Amendment to the Plan.[12] The Trustees' action in making the Forty–Second Amendment contingent upon a favorable determination from the IRS, supports their assertion that they were acting cautiously on behalf of the Plan and in good faith.

Plaintiffs have come forward with no evidence or legal authority in support of their argument that Defendants acted in breach of their fiduciary duties. Defendants are accordingly entitled to judgment in their favor on Plaintiffs' allegations that their actions violated section 404(a)(1)(A) of ERISA.

## IV.

In Count II of their complaint Plaintiffs allege that Defendants' passage of the Forty–Second Amendment and their continuation of the effect of the Forty Second Amendment violates section 12.2 of Plan and is a breach of Section 404(a)(1)(A) of ERISA.

ERISA section 404(a)(1)(D) provides that "a fiduciary shall discharge his duties with respect to a plan in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title...." 29 U.S.C. § 1104(a)(1).

Section 12.2 of the Plan provides, in pertinent part, that "The Trustees shall have a right to amend this Plan at any time and to any extent they deem advisable; provided, however, no such amendment shall ... deprive any Participant who has retired under this Plan prior to the date of such amendment of any Retirement Benefit under this Plan or change to the provision of any such benefit ...."

Section 12.2 essentially parrots the statutory prohibition against the reduction or elimination of accrued benefits set forth in ERISA and the IRC. The analysis above with respect to § 204(g)(1) of ERISA also resolves Plaintiffs' argument that Defendants breached the terms of the Plan. Defendants are accordingly entitled to judgment in their favor on Plaintiffs' allegations that their actions violated section 12.2 of the Plan.

## V.

For the reasons stated herein, Plaintiffs' motion for summary judgment will be denied, Defendants' motion for summary

---

**10.** Defendants' Exh. 3, Forty–Second Amendment to Plan, p. 2.

**11.** Defendants' Exh. 4, Comment of Retirees, Surviving Spouses and Active Participants of the Asbestos Workers Local No. 47 Retirement Trust Plan to Form 6406 submission of September 24, 1998.

**12.** Defendants' Exh. 6, December 28, 1998, Letter from the IRS. The IRS also made a favorable determination on the Forty–Seventh Amendment to the Plan. Defendants' Exh. 7, November 21, 2000, letter from the IRS.

judgment will be granted, and this case will be dismissed in its entirety.

An order and judgment consistent with this opinion will be entered.